No. 67,081

CREDIT UNION ONE OF KANSAS, *Appellee/cross-appellant*, v.
SUSAN D. STAMM, *Appellant/cross-appellee*.

(867 P.2d 285)

Opinion filed January 21, 1994.

*Lynn D. Lauver*, of Topeka, for appellant/cross-appellee.

*Steven K. Johnson*, of Fisher, Patterson, Sayler & Smith, of Topeka, for appellee/cross-appellant.

*Charles N. Henson* and *Anne L. Baker*, of Wright, Henson, Somers, Sebelius, Clark & Baker, of Topeka, for *amicus curiae* Kansas Bankers Association.

*Michael L. North* and *Curtis A. Loub*, of Boyer, Donaldson & Stewart, of Wichita, for *amicus curiae* Kansas Credit Union Association.

The opinion of the court was delivered by

DAVIS, J.: This appeal involves a consumer credit transaction governed by the Uniform Consumer Credit Code, K.S.A. 16a-1-101 *et seq.* (UCCC). The district court held that the attorney fees provisions in a consumer credit contract violated K.S.A. 16a-2-507 and imposed a $500 penalty against Credit Union One of Kansas under K.S.A. 16a- 5-201(1). The Court of Appeals reversed

in an unpublished decision filed August 21, 1992, holding that the attorney fees provisions did not violate K.S.A. 16a-2-507. We granted the defendant consumer's petition for review.

Credit Union One loaned money to Susan D. Stamm and acquired a security interest in her 1979 Mazda. Stamm defaulted on the loan. The trial court granted Credit Union One a deficiency judgment and granted Stamm a setoff penalty because Credit Union One had sought attorney fees in the contract. The agreement contained the following provision regarding attorney fees:

"The expenses of the credit union for taking possession of and selling the property will be deducted from the money received from the sale. Those costs may include the cost of storing the property, preparing it for sale, and *attorney's fees to the extent permitted under state law or awarded under § 506(b) of the Bankruptcy Code.*" (Emphasis added.)

On appeal to this court, Stamm claims that the above fee provision violates K.S.A. 16a-2-507 of the UCCC:

"With respect to a consumer credit transaction, the agreement may not provide for the payment by the consumer of attorney's fees. A provision in violation of this section is unenforceable." K.S.A. 16a-2-507.

The district court held that the above provisions respecting attorney fees violated K.S.A. 16a-2-507. Pursuant to the following consumer remedies provisions of the UCCC, the district court awarded judgment against Credit Union One in the amount of $500:

"(1) If a creditor has violated the provisions of this act applying to . . . attorney's fees (section 16a-2-507), . . . the consumer has a cause of action to recover actual damages and in addition a right in an action other than a class action to recover from the person violating such provisions of this act a penalty in an amount determined by the court not less than one hundred dollars ($100) nor more than one thousand dollars ($1,000)." K.S.A. 16a-5-201.

Prior to imposing the penalty, the district court stated:

"It is clear to me that creditor has intentionally included this provision hoping to use it in the event a bankruptcy occurs. For that intentional violation of the law, this court would be disposed to impose a substantial penalty."

Credit Union One cross-appealed this ruling. The Court of Appeals held:

"The operative phrase of the statute, 'provide for the payment,' is not violated by the contract terms, 'attorney's fees to the extent permitted by state law,' in the opinion of this court. The contract provision, read literally, does not provide for attorney fees in Kansas, and the $500 penalty should not have been awarded."

On this issue we granted Stamm's petition for review. In granting review, we considered that the issue is one of first impression before this court and that another panel of the Court of Appeals in *Halloran v. North Plaza State Bank*, 17 Kan. App. 2d 840, 844 P.2d 764 (1993), reached a contrary result on a similar issue, holding:

"A provision in a security agreement that authorizes a lender to apply proceeds from the sale of collateral to attorney fees 'if permitted' violates K.S.A. 16a-2-507, notwithstanding 11 U.S.C. § 506(b) (1984), which allows an award of fees in bankruptcy court to an oversecured creditor who has a fee agreement." 17 Kan. App. 2d 840, Syl. ¶ 2.

The full text of the agreement provisions regarding fees at issue in *Halloran* was as follows:

" 'You [The Bank] may apply the proceeds of the disposition to your reasonable expenses for realizing on a security interest (including costs of repossession, attorneys' fees (if permitted), repairs (if necessary) and costs of sale) and then to payment of the secured obligations.' " 17 Kan. App. 2d. at 841.

The issue before this court on petition for review is whether the provisions relating to attorney fees in the security agreement violated K.S.A. 16a-2-507. Regardless of previous constructions, our review is unlimited. We therefore construe the contract and determine its legal effect anew in this appeal. *Mark Twain Kansas City Bank v. Cates*, 248 Kan. 700, 704, 810 P.2d 1154 (1991).

Kansas has allowed the recovery of attorney fees when the contract provided for those fees. *E.g., Gaslight Villa, Inc. v. City of Lansing*, 213 Kan. 862, 873, 518 P.2d 410 (1974); *Wheat Growers Ass'n v. Rowan*, 125 Kan. 657, 266 Pac. 104 (1928). See Comment, Recovery of Attorney Fees in Kansas, 18 Washburn L.J. 535, 543-45. However, Kansas limits recovery of attorney fees primarily in debt contracts. K.S.A. 58-2312 provides:

"[I]t shall be unlawful for any person or persons, company, corporation or bank, to contract for the payment of attorney's fees in any note, bill of exchange, bond or mortgage; and any such contract or stipulation for the

payment of attorneys fees shall be null and void; and that hereafter no court in this state shall render any judgment, order or decree by which any attorney's fees shall be allowed or charged to the maker of any promissory note, bill of exchange, bond, mortgage, or other evidence of indebtedness."

This statute has been strictly construed based upon a stated Kansas public policy that attorney fee provisions in debt instruments are inimical to the public good. *Young v. Nave*, 135 Kan. 23, 24, 10 P.2d 23 (1932). This same policy is incorporated into the UCCC, which declares a fee provision in a consumer credit transaction unenforceable and subject to penalty. K.S.A. 16a-2-507; 16a-5-201(1), (8).

Credit Union One argues that the agreement does not provide for payment by the consumer of attorney fees because such fees are expressly prohibited in Kansas. The agreement itself acknowledges that only those fees permitted in Kansas will be allowed and since Kansas prohibits such fees, no fees are provided for in the agreement. The Court of Appeals' opinion essentially adopts this argument in its decision that "[t]he contract provision, read literally, does not provide for attorney fees in Kansas."

Stamm contends that the agreement contains two provisions for attorney fees. It provides for attorney fees to the extent permitted under state law or awarded under § 506(b) of the Bankruptcy Code. 11 U.S.C. § 506(b) (1988). She argues that the presence of such clauses, or a similar clause "if permitted" as used in *Halloran*, does not put the debtor on notice that Kansas law prohibits fees in a consumer credit transaction and that an unscrupulous creditor may exact fees even though prohibited. Moreover, she argues that an unsuspecting debtor may give up valuable rights in fear of being saddled with attorney fees in the event the matter is presented to a court of law. Thus, according to her arguments, in order to preserve the strong state policy against fees in such transactions, the clauses must be condemned as prohibited by law.

In *Halloran*, the Bank made much the same argument as Credit Union One makes before this court. It argued that the clause "if permitted" limited its provision for attorney fees to only those permitted by Kansas law. Since K.S.A. 16a-2-507 prohibits fees, the Bank argued that the provision in the agreement was without

effect. In addressing this contention, *Halloran* states that the Bank's argument "ignores the unqualified nature of the prohibition contained in K.S.A. 16a-2-507." 17 Kan. App. 2d at 842. *Halloran* observes that K.S.A. 16a-2-507 includes no exceptions; it states that an agreement may not provide for attorney fees. *Halloran* also notes that the Bank's argument ignored 16a-5-201, which penalizes inclusion of an attorney fee provision regardless of whether the creditor actually collects fees. It should be noted that Credit Union One made no attempt to collect fees under the contractual provision we now examine.

The Court of Appeals in this case held that the agreement permitted fees only to the extent permitted by state law and thus the agreement did not "provide for the payment" of fees in violation of K.S.A. 16a-2-507. In holding that the statute includes no exceptions and the agreement violates the law by providing for attorney fees, *Halloran* ignores the contingent nature of the agreement providing for the consumer to pay fees "if permitted."

While there was no language in the *Halloran* agreement concerning bankruptcy, the argument was made that § 506(b) of the Bankruptcy Code, authorized a fee award despite contrary state law provisions. *Halloran* rejected this contention, concluding that the statute did not come into play because the section applied only to oversecured creditors and the Bank was not an oversecured creditor. In *Credit Union One*, the Court of Appeals did not directly address the contention that the express provision for fees in bankruptcy violates K.S.A. 16a-2-507, except to say:

"There exists a dichotomy in law between Kansas law, as set out in K.S.A. 16a-2-507, and bankruptcy law, at 11 U.S.C. § 506(b) (1988), in the treatment of secured creditors. The creditor must ask for attorney fees in the agreement under 506(b) but 'may not provide for the payment by the consumer of attorney's fees' in Kansas."

We must examine both clauses in the agreement in our determination whether the fee provisions violate K.S.A. 16a-2-507. The agreement provides that Credit Union One will deduct the expenses of the credit union for taking possession of and selling the property from the money received from the sale of the collateral and that the costs of taking possession and selling may include (1) "attorney's fees to the extent permitted under state law" or (2) "awarded under § 506(b) of the Bankruptcy Code."

(1) To the Extent Permitted under State Law

Credit Union One contends that no expense for attorney fees may be deducted from "money received from the sale" because K.S.A. 16a-2-507 prohibits attorney fees in a consumer credit transaction. Thus, according to its argument, the agreement does not "provide for the payment by the consumer of attorney's fees" in violation of K.S.A. 16a-2-507. We agree with this contention.

While the agreement mentions attorney fees, it is not the mere presence of language regarding fees that is proscribed by law. K.S.A. 16a-2-507 clearly states that the "agreement may not *provide for the payment* by the consumer of attorney's fees." (Emphasis added.) The language used is conditional and never will, according to the express terms of the agreement, permit the creditor to deduct the cost of attorney fees upon default. We hold that language in a security agreement governed by the UCCC providing that attorney fees may be deducted from the proceeds of the sale of collateral upon default "to the extent permitted under state law" does not "provide for the payment by the consumer of attorney's fees" in violation of K.S.A. 16a-2-507. The Court of Appeals was correct in its decision that the agreement, read literally, does not provide for attorney fees.

On the other hand, *Halloran* points to the unqualified nature of the prohibition contained in K.S.A. 16a-2-507, notes that the statute includes no exceptions, and states that an agreement may not provide for attorney fees. As we read *Halloran,* any language in the agreement regarding fees, albeit contingent or conditional, is sufficient to trigger a violation. We disagree and overrule syllabus ¶¶ 1 and 2 of *Halloran,* 17 Kan. App. 2d 840, and corresponding portions of the opinion.

While we recognize the basic policy in Kansas against fee provisions in consumer credit transactions governed by the UCCC, K.S.A. 16a-2-507 requires that the agreement "provide for the payment by the consumer of attorney's fees" before a violation occurs. The specific language used in this agreement, "to the extent permitted under state law," does not "provide for payment by the consumer of attorney's fees" because such payment would not be permitted under our state law. The language used in this agreement does not violate the provisions of K.S.A. 16a-2-507.

(2) Awarded under § 506(b) of the Bankruptcy Code.
Section 506(b) of the Bankruptcy Code provides:

"To the extent that an allowed secured claim is secured by property the value of which, after any recovery under subsection (c) of this section, is greater than the amount of such claim, there shall be allowed to the holder of such claim, interest on such claim, and any reasonable fees, costs, or charges provided for under the agreement under which such claim arose." 11 U.S.C. § 506(b).

Stamm argues that language in the agreement "or awarded under § 506(b) of the Bankruptcy Code" also provides "for the payment by the consumer of attorney's fees," justifying imposition of the trial court's penalty in the amount of $500. We note that the trial court seemed to base its decision upon this provision in the agreement when it said that the creditor intentionally included this provision hoping to use it in the event bankruptcy occurs.

The Court of Appeals here does not address the question whether the provision regarding attorney fees in bankruptcy violates K.S.A. 16a-2-507. *Halloran* does not directly address this question either.

*Amicus* Kansas Credit Union Association, *amicus* Kansas Banking Association, and Credit Union One, in its cross-appeal, argue that there is an inherent conflict between federal and state law and that federal law is supreme. According to their argument, the supremacy clause of the Constitution requires that we acknowledge and apply federal law in this case. The result would be to give effect to the provision in the agreement without imposing a penalty, even though a similar provision would be void and unenforceable in state court and would violate the stated policy in Kansas against attorney fee provisions in secured credit agreements.

*Amici* and Credit Union One rely on *In re American Metals Corp.*, 31 Bankr. 229, 234 (Bankr. D. Kan. 1983), in which Judge Franklin held that § 506 allows an award of fees to an oversecured creditor, notwithstanding contrary Kansas state law. Three federal circuit courts also have held that "Congress intended to abrogate the pre-existing requirement that attorney's fee agreements were enforceable only in accordance with state law. Such agreements are now enforceable notwithstanding contrary law." *Unsecured*

*Creditors' Committee v. Walter E. Heller*, 768 F.2d 580, 585 (4th Cir. 1985). Accord *In re Hudson Shipbuilders, Inc.*, 794 F.2d 1051, 1058 (5th Cir. 1986); *Matter of 268 Ltd.*, 789 F.2d 674, 676 (9th Cir. 1986). A relevant treatise sums up the argument in favor of enforcement as follows:

"In a general codification of prior law, § 506(a) of the Bankruptcy Code splits a secured creditor's claim into two parts: (1) a secured claim to the extent of the value of the collateral at the time of bankruptcy and (2) an unsecured claim to the extent of the balance. Of special interest to the secured creditor who comes into bankruptcy in an overcollateralized position is § 506(b), which allows such a creditor to apply the surplus to interest on the claim and attorney fees provided for in the security agreement (including fees incurred in connection with the bankruptcy proceeding itself). A strong argument can be made that attorney fee clauses in security agreement forms are enforceable in bankruptcy by an oversecured Article 9 creditor, even though state law prohibits such clauses outside bankruptcy. In other words, § 506(b) is a direct federal grant to the creditor that preempts conflicting state law. The legislative history strongly suggests such a conclusion. Thus, secured creditors in non-attorney fee states should consider including in their security agreement forms a clause imposing reasonable attorney fees triggered by the debtor's bankruptcy. Because a bank's right to setoff is treated like a security interest for purposes of determining the amount of the secured claim under § 506(a), both interest and attorney fees as authorized by prior agreement may also be allowed to the bank with a right to setoff to the extent that the setoff exceeds the allowed claim." Clark, The Law of Secured Transactions under the Uniform Commercial Code, ¶ 6.01 (rev. ed. 1993).

Another argument in favor of preemption is that § 506(b) preempts state attorney fees law where the state law " 'stands as an obstacle to the accomplishment and execution of the full purposes and objectives of Congress.' " *Capital Cities Cable, Inc. v. Crisp*, 467 U.S. 691, 698-99, 81 L. Ed 2d 580, 104 S. Ct. 2694 (1984). The argument made is that Congress intended by its enactment of § 506(b) to create a separate federal right to fees not dependent upon state law; that the right is enforceable notwithstanding state law to the contrary; that enforcement of the federal right furthers important federal policy; and that for these reasons federal law preempts state law. See generally Comment, *Preemption of State Law Notice Provisions Governing the Recovery of Attorneys' Fees by § 506(b) of the Bankruptcy Code*, 1986 Duke L.J. 176, 190 (1986).

We need not and do not decide whether federal law preempts state law in this case. The bankruptcy attorney fee provision in this agreement tracks the federal statute. The agreement authorizes fees to a secured creditor but only in bankruptcy, and then only to the extent the creditor is over-collateralized.

We conclude that the existence of the fee provision in this agreement does not violate the policy expressed in K.S.A. 16a-2-507. The clause "or awarded under § 506(b) of the Bankruptcy Code" furthers federal policy and does not violate the policy for protection of consumer debtors expressed in K.S.A. 16a-2-507. We hold that the presence of such a clause in a security agreement governed by the UCCC does not violate K.S.A. 16a-2-507.

Judgment of the Court of Appeals reversing the district court is affirmed; judgment of the district court is reversed.